```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MINNESOTA
                        06-CV-1811 (JMR/FLN)
```

| | |
|---|---|
| Gerri A. Larson | ) |
| | ) |
| v. | )    ORDER |
| | ) |
| Ford Credit (d/b/a Primus), | ) |
| and Interstate Credit Control | ) |

Defendant Ford Motor Credit Company ("Ford Credit") objects to the Report and Recommendation, issued by the Honorable Franklin L. Noel, United States Magistrate Judge, on February 12, 2007. The Report recommended granting in part, and denying in part, Ford Credit's motion to dismiss, made pursuant to Fed. R. Civ. P. 12(b)(6). Ford Credit timely filed its objection, pursuant to Local Rule 72.2.

Based upon a de novo review of the record herein, the Court adopts the Magistrate's Report and Recommendation.

I. Background

The background information is taken from the allegations in plaintiff's pro se Complaint and Amended Complaint (collectively, "Complaint").[1] These allegations are presently presumed true, as plaintiff is the non-moving party. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002).

---

[1] It is undisputed that the allegations in plaintiff's Amended Complaint, filed August 10, 2006, arise out of the same "conduct, transaction or occurrence" set forth in her original Complaint, and therefore relate back to her original Complaint filed May 16, 2006. Fed. R. Civ. P. 15(c)(2).

According to the pleadings, sometime in January, 2004, plaintiff reviewed her credit report, and discovered inaccurate information. In particular, the report referred to a charge-off on a Ford Credit account she had paid in full. She contacted Ford Credit and the credit bureaus to report the mistake. She sent at least three certified letters to the credit bureaus. Her most recent letters were dated January 5, April 26, and May 5, 2004. Despite her efforts, Ford Credit continued to report the incorrect information as late as March 15, 2005. Plaintiff continued to follow up, and on May 17, 2005, spoke by telephone with a representative of Ford Credit regarding her dispute.

On May 16, 2006, plaintiff filed her Complaint. Count I of the Complaint claims Ford Credit failed to investigate and remove inaccurate information from her credit report, in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2 (1998 & Supp. 2006) ("FCRA"). Count II alleges credit defamation under Minnesota law. Count III alleges tortious interference with business expectancy. Count IV alleges unfair or deceptive trade practices prohibited by the FCRA. With respect to the statute of limitations, plaintiff specifically alleges that "entries from . . . Ford [C]redit were report[ed] within a 2 year period from date of Complaint." (Amended Complaint at 4.)

Ford Credit moves to dismiss plaintiff's Complaint, claiming it is time-barred.

II. <u>Analysis</u>

The Court affords a liberal construction to <u>pro se</u> pleadings. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). A court should not dismiss a plaintiff's complaint if there are "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007). Put another way, a plaintiff must plead facts showing a "reasonably founded hope that the [discovery] process will reveal relevant evidence" to support the claim. <u>Id.</u> at 1967.

The FCRA requires that those who furnish information to credit reporting agencies (1) provide accurate information to those agencies, and (2) investigate the accuracy of information they have provided upon receiving notice of a dispute. 15 U.S.C. § 1681s-2(a),(b). The FCRA imposes civil liability for a credit reporting agency which either reports inaccurate information, or fails to conduct a reasonable investigation in response to a consumer dispute. <u>See</u> <u>Hurocy v. Direct Merchants Credit Card Bank</u>, 371 F. Supp. 2d 1058, 1059 (E.D. Mo. 2005). The FCRA gives consumers the right to bring a civil action against those who furnish inaccurate information. <u>Id.</u> at 1060.

The current version of the FCRA, in effect when plaintiff

filed her Complaint,[2] requires commencement of a civil action "not later than the earlier of":

> (1) 2 years after the date of discovery by plaintiff of the violation that is the basis for such liability; or
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p (1998 & Supp. 2006).

Both parties agree the two-year statute of limitations applies here. Because this action was filed on May 16, 2006, plaintiff's claim is untimely if it accrued before May 16, 2004. The question then, is, when did plaintiff's claim accrue? The Eighth Circuit has not spoken on this question in the FCRA context. Two lines of analysis have been developed by other courts, both based on the law of defamation.

The majority of courts considering the question have drawn upon defamation's traditional "multiple-publication rule." Under this rule, each publication of the same falsehood by the same defamer is a separate cause of action, thus starting the limitations clock anew. Restatement (Second) of Torts § 577A(1). In the FCRA context, this means each transmission of erroneous credit information is a separate FCRA violation. See Hyde v. Hibernia Nat'l Bank, 861 F.2d 446, 450 (5th Cir. 1988) ("each

---

[2]Prior to March 31, 2004, the FCRA allowed an action to be brought "within two years from the date on which the liability arises" except in cases of material misrepresentation, which were subject to a discovery rule. TRW Inc. v. Andrews, 534 U.S. 19, 22 (2001).

4

transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies"); <u>Campbell v. Chase Manhattan Bank</u>, 2005 WL 1514221, *11 n.5 (D.N.J., June 27, 2005) (unpublished) (same), <u>amended on reconsideration on other grounds</u>, 2005 WL 1924669 (D.N.J., Aug. 10, 2005); <u>Lawrence v. Trans Union LLC</u>, 296 F. Supp. 2d 582, 587 (E.D. Pa. 2003) (same); <u>Acton v. Bank One Corp.</u>, 293 F. Supp. 2d 1092, 1098 (D. Ariz. 2003) (same); <u>Jaramillo v. Experian Information Solutions, Inc.</u>, 155 F. Supp. 2d 356, 359-60 (E.D. Pa. 2001) (same), <u>reconsideration granted on other grounds</u>, 2001 WL 1762626 (E.D. Pa., June 20, 2001); <u>Whitesides v. Equifax Credit Information Servs.</u>, 125 F. Supp. 2d 807, 812 (W.D. La. 2000); <u>Gill v. Kostroff</u>, 2000 WL 141258, *5 (M.D. Fla., Feb. 8, 2000) (unpublished); <u>Wilson v. Porter, Wright, Morris & Arthur</u>, 921 F. Supp. 758, 759 (S.D. Fla. 1995) ("[t]he alleged violations of the FCRA by Equifax occurred when the credit reports were issued"); <u>Schneider v. United Airlines, Inc.</u>, 256 Cal. Rptr. 71, 78 (Cal. App. 1989); <u>Lawhorn v. Trans Union Credit Information Corp.</u>, 515 F. Supp. 19, 20 (E.D. Mo. 1981); <u>see also</u> <u>Swafford v. Memphis Indiv. Practice Ass'n</u>, 1998 WL 281935, *8 (Tenn. Ct. App., June 2, 1998) (unpublished) (addressing defamation claims against a medical rather than credit reporting service).

Ford Credit asks the Court to reject this analysis. Instead, it asks the Court to adopt a minority position, applying the "single-publication rule," which is an exception to the traditional rule. At common law, the single-publication rule remedied a shortcoming in the traditional rule when considering a mass-published defamatory statement. This exception was carved out in response to a situation under which every time an individual saw a copy of a defamatory print run, that event could conceivably give rise to a new cause of action. See Debra R. Cohen, The Single Publication Rule:  One Action, Not One Law, 62 Brooklyn L. Rev. 921, 931-32 (1996). Under such a circumstance, it was possible that "the statute of limitations would no longer be effective if it were renewed every time a new party saw the libelous statement." Sapna Kumar, Comment, Website Libel and the Single Publication Rule, 70 U. Chi. L. Rev. 639, 639-40 (2003). Accordingly, the single-publication rule holds that multiple copies of an "aggregate communication," such as a newspaper or magazine, are considered a single publication giving rise to one cause of action. Restatement (Second) of Torts § 577A(2), (3).

Minnesota accepts the single-publication rule in the mass publishing context. Church of Scientology v. Minnesota State Medical Ass'n Found., 264 N.W.2d 152, 155 (Minn. 1978). And in considering compelled self-publication defamation in the employment context, federal courts have applied the rule. See Johnson v.

Overnite Transp. Co., 19 F.3d 392, 393 (8th Cir. 1994) (per curiam); Petersen v. Norwest Corp., 1988 WL 425635, *3 (D. Minn., June 16, 1988).

Now, Ford Credit urges the Court to extend the single-publication rule to the FCRA. It offers an oral ruling by the Honorable Ann D. Montgomery, in Fearon v. Fleet Credit Card Servs., Civ. No. 00-2395, Docket No. 9, at 17-18 (D. Minn., Feb. 22. 2001) (unpublished transcript, attached as Ex. A to Ford Credit's Objection to Report & Recommendation). Judge Montgomery ruled in a case brought under the earlier version of the FCRA statute of limitations, finding the plaintiff's claims accrued on the "publishing date of the statement"; that is, when defendant reported to the credit bureaus an incorrect balance on plaintiff's account. Fearon at 17-18. Defendant did so twice, and acknowledged that each of the reports would be subject to a separate statute of limitations. Id. at 6-7. But because both reports occurred more than two years prior to filing the complaint, the court found both the FCRA and defamation claims time-barred. Id. Judge Montgomery specifically rejected plaintiff's argument that the limitations period commenced when the plaintiff requested that the credit reporting agencies issue a consumer dispute verification ("CDV") form to defendant. Id. at 14-16, 18.

The opinion in Fearon relied upon an unpublished Northern District of Illinois case, Ryan v. Trans Union Corp., 2000 WL

7

1100440, *2 (N.D. Ill., Aug. 4, 2000) (unpublished). There, the plaintiff's last communication with defendants occurred before the FCRA imposed any liability for defendants' alleged conduct. Id. at *1. When the relevant provision became effective, the plaintiff requested that CDV forms be issued to defendants. Id. at *2. The court held that the plaintiff's request did not bring the claims within the ambit of the new statute, observing:

> The fact that the inaccurate information predates the statute's effective date does not necessarily end the story; we cannot say that the fact that bad information is old necessarily absolves an information provider from investigating and correcting it after the statute's effective date. What we have here, however, is basically an attempt to drag out an old dispute, polish it up, and call it new.

Id. Accordingly, the court granted summary judgment for defendants.

This Court is not persuaded by either Fearon or Ryan. And the facts here are wholly different from each of those cases.

First, neither opinion calls into question the fundamental issue here: that, as presently enacted, the FCRA makes providers of credit information liable for each report of erroneous information. See Fearon at 17-18; Ryan, 2000 WL 110440, *3 ("providers of information . . . are accountable only if they continue to supply inaccurate data to credit reporting agencies after notification"); see also 15 U.S.C. § 1681s-2(b)(1)(A)-(D). The problem in both cases was that the plaintiff failed to allege defendant had provided an erroneous report during the relevant time

period.  Here, plaintiff has alleged such a report.

Second, <u>Fearon</u> and <u>Ryan</u> neither acknowledge, nor differentiate between, the single and multiple publication rules.  Neither considers whether the single-publication rule is appropriate in the credit reporting context.  Having reviewed the numerous well-reasoned cases which have considered these issues - many decided after <u>Fearon</u> and <u>Ryan</u> - this Court is disinclined to adopt either the reasoning or the rule in <u>Fearon</u> and <u>Ryan</u>.

This Court finds no sound basis upon which to import a common law rule crafted for mass publication into Congress's enactment granting remedies to individuals damaged by the wrongful acts of credit reporting agencies.  There is simply no way to equate the provision of a consumer's information to credit reporting agencies with the mass distribution of a newspaper's or magazine's claimed defamatory statement.  Credit information is confidential; dissemination is limited; and it is easy to determine exactly when and to whom the information was disseminated. Lori A. Wood, <u>Cyber-Defamation and the Single Publication Rule</u>, 81 B.U. L. Rev. 895 , 913 (2001); <u>Hyde</u>, 861 F.2d at 450; <u>Swafford</u>, 1998 WL 281935, *8.  The FCRA offers no risk of "a vast multiplicity of lawsuits resulting from a mass publication." <u>Swafford</u>, <u>id.</u>  The Court agrees with the Fifth Circuit's observation:

> We do not find the rationale underlying the single-publication rule applicable to the Fair Credit Reporting Act. The major harm may, indeed, result from the first transmission of defamatory material to an institution, but the confidential nature of a credit report necessarily means that each new issuance results in a separate and distinct injury.

Hyde, 861 F.2d at 450.

Plaintiff disputed information on her credit report and invoked Ford Credit's statutory obligation to investigate her concerns and correct the information if necessary. 15 U.S.C. § 1681s-2(a),(b). The limitations period runs from the "violation" - Ford Credit's alleged failure to perform either of its duties - or from plaintiff's later discovery of the violation. 15 U.S.C. § 1681p.

Accordingly, the Court finds that each re-report of inaccurate information, and each failure to conduct a reasonable investigation in response to a dispute, is a separate FCRA violation subject to its own statute of limitations.

At this point in the proceedings, the Court is constrained to accept plaintiff's contention that she discovered the erroneous charge-off on her credit report as early as January, 2004. If that erroneous report were the only alleged violation of FCRA, her claim would arguably be untimely. But she alleges additional violations -- specifically, that Ford Credit, on successive occasions and after notice, repeatedly failed to properly investigate her later communications, and that it continued to

report the error after May 16, 2004. Accordingly, each of these successive failures to comply with the law is subject to the two-year limitations period, from the date each violation of the FCRA occurred. Read generously, the Complaint's facts allow a "reasonably founded hope that the [discovery] process will reveal relevant evidence" to support plaintiff's allegations. <u>Bell Atlantic</u>, 127 S.Ct. at 1967. This is enough to state a claim. Fed. R. Civ. P. 8(a).

Discovery may ultimately reveal facts showing that plaintiff discovered all of the alleged violations before May 16, 2004. But on these facts, the Court cannot conclude that plaintiff's FCRA claim is time-barred, and therefore defendant's motion to dismiss must be denied.

Counts II and III allege claims under Minnesota law. Defendant's motion to dismiss shall be denied as to these counts, for the reasons set forth in the Magistrate's Report & Recommendation.

Count IV shall be dismissed for the reasons set forth in the Magistrate's Report and Recommendation.

Accordingly, the Court adopts the Magistrate's Report and Recommendation [Docket No. 45].

1.  Defendant's motion to dismiss is denied as to Counts I, II and III.

2. Defendant's motion to dismiss is granted as to Count IV.

IT IS SO ORDERED.

Dated:  June 27, 2007

                                           s/ James M. Rosenbaum
                                           JAMES M. ROSENBAUM
                                           United States Chief District Judge